[Cite as *State v. Carmichael*, 2013-Ohio-2178.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 CO 23 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| BRYAN CARMICHAEL | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from the Court of
                               Common Pleas of Columbiana County,
                               Ohio
                               Case No. 10 CR 151

JUDGMENT:                      Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        Atty. Robert Herron
                               Columbiana County Prosecutor
                               Atty. Ryan P. Weikart
                               Assistant Prosecuting Attorney
                               105 South Market Street
                               Lisbon, Ohio  44432

For Defendant-Appellant:       Atty. Douglas A. King
                               Hartford, Dickey & King Co., LPA
                               91 West Taggart Street
                               P.O. Box 85
                               East Palestine, Ohio  44113

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                               Dated:  May 23, 2013

WAITE, J.

{¶1} Appellant was involved in a shooting at a bar in East Liverpool. Appellant was not the gunman, but drove the gunman away from the scene and purchased the motel rooms where he, the shooter and a third man travelling with them stayed after the incident. The three men were apprehended together in the early morning following the shooting. Appellant was ultimately charged with complicity to felonious assault. Appellant appeals this conviction primarily due to the introduction of evidence suggesting that he and his travelling companions, who were from Columbus, were involved in drug trafficking. Appellant alleges error with regard to the prosecutor's offering of and the trial court's decision to allow before the jury some evidence of drug-related activity. Appellant also claims error based on the weight of the evidence supporting his conviction. Appellant's six assignments of error are without merit and are overruled.

Factual and Procedural History

{¶2} Appellant, Bryan Carmichael, drove the getaway car in a shooting that occurred outside the A1 Hideaway Bar in East Liverpool, Ohio. According to witnesses at the scene that night, an argument began inside the bar, apparently between bar patrons. The argument moved outside and three men from Columbus, Ohio, including Appellant and his companion Carlos Garner, became involved. A local man, Rick Austin III and his father were among the people who moved out into the parking lot. The younger Mr. Austin threw a bottle which exploded against a fence and Garner confronted him. The older Mr. Austin hit Garner and he fell to the ground. As Garner got up, he ordered Appellant to start their car, and then shot the

older Mr. Austin in the hip with a .9 mm pistol.  According to witnesses at the scene, Garner pulled the pistol prior to sending Appellant off to start the car.  (Tr., pp. 245-245; 497.)

{¶3}    Appellant did start their car and apparently pulled toward the group. According to witnesses, Garner moved to the car, stood on the door frame, and fired or attempted to fire more shots toward Mr. Austin.  (Tr., pp. 143-144.)   When Garner's gun jammed, he entered the vehicle and Appellant, who was driving, sped off down the street.  (Tr., pp. 145-145.)  The third man, Tysin Gordon, was present during the incident, but the extent of his involvement is unclear from this record.  The three men ended their evening at the East Liverpool Motor Lodge, where they asked how long it would take to get to Youngstown.  When told it would take over an hour, Appellant rented and paid for two rooms. (Tr., p. 278.)  Appellant and a woman took one room, the gunman, Gordon and a second woman took the other.  The rooms they were initially assigned were at some distance from one another, and Appellant returned to the office to request a room change so that the group could stay close together.  (Tr., pp. 276-280.)

{¶4}    The patrolmen who responded to the incident at the bar were able to take statements at the scene from multiple witnesses.  The officers were also aided in their investigation by information received during their ongoing narcotics investigations.  Narcotics investigators had previously connected the three men to a known dealer in the area and were able to share with the investigators of the bar shooting the pattern of activity of the three men and their possible whereabouts.

**{¶5}** When the investigating officers arrived at the motel, they found a rented vehicle matching the description of the getaway car. The vehicle was parked in a manner that concealed its single out-of-county license plate against a wall. Clothing and a digital scale were collected from the men's motel rooms. Samples from the scene revealed cocaine residue. When the three were apprehended, they had large amounts of cash concealed in their shoes. According to investigators, the shooting was believed to be drug-related from the beginning of the investigation because Appellant and the other two men were affiliated with a known dealer. (Tr., pp. 213-214; 220; 224; 347.)

**{¶6}** The statements given by the victim and his son at the scene and later the same night were subsequently contradicted by some of the testimony the two provided at trial. According to the prosecution and trial testimony, the three Columbus-area men were involved in drug trafficking and the argument at the bar concerned that involvement. According to the defense, Appellant had no idea that co-defendant Garner intended to shoot anyone, and was unaware that Garner shot Mr. Austin prior to driving away with Garner. Appellant also claims he did not know Garner continued to attempt to shoot the victim as he entered the car.

**{¶7}** Appellant was convicted following a three-day trial. During the course of the trial, the judge overruled two mistrial motions. The first motion was made when testimony was offered as to the chain of custody of clothing collected when Appellant and the other two men were arrested. This clothing was tested for gunshot residue to help identify which of them might have discharged a firearm that night. The second motion was made at the close of all of the prosecution evidence and essentially

alleged that there was not enough prosecution evidence to even put before the jury. Both were overruled. The jury returned a unanimous guilty verdict on April 27, 2011 and Appellant was released on bond. Appellant was sentenced on June 30, 2011, to four years in prison with credit for eleven days served. Appellant's timely appeal of his conviction was filed from the entry of his sentence.

Argument and Law

ASSIGNMENT OF ERROR NO. 1

Appellant was deprived his due process right to a fair trial by misconduct on the part of the prosecutor.

**{¶8}** The standard of review for prosecutorial misconduct is whether the actions by the prosecution were improper, and, if so, whether they prejudiced Appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). "In determining whether the prosecutor's statements affected a substantial right of the defendant, an appellate court should consider the following factors: '(1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant.' " *State v. Scott*, 7th Dist. No. 07 MA 152, 2009-Ohio-4961, ¶85, quoting *State v. Breland*, 11th Dist. No. 2003-A-0066, 2004-Ohio-7238, ¶29.

**{¶9}** Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived Appellant of a fair trial based on the entire record. *State v. Lott*, 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990); *State v.*

*Skidmore*, 7th Dist. No. 08 MA 165, 2010-Ohio-2846, ¶44; appeal not allowed, 126 Ohio St.3d 1602, 2010-Ohio-4928, 935 N.E.2d 47. The test for prosecutorial misconduct focuses on "the fairness of the trial, not the culpability of the prosecutor." *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶91.

**{¶10}** Usually, an appellant alleging prosecutorial misconduct is complaining about allegedly improper statements made by a prosecutor during opening or closing remarks. Appellant first alleges prosecutorial misconduct not for any statement made during opening arguments, but for various references throughout the trial to Appellant's alleged involvement in drug trafficking. In a majority of the instances now alleged as misconduct, no objection was raised in the trial court. Therefore, Appellant has waived all but a plain error review of these alleged errors. Crim.R. 52(B). Use of the discretionary plain error doctrine requires us to find an obvious error that affected substantial rights under exceptional circumstances. Crim.R. 52(B); *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). It cannot be utilized unless the outcome clearly would have been different if not for the error. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

**{¶11}** In the remaining instances Appellant now claims were misconduct, evidentiary objections were raised by defense counsel at the time. The trial court did end the line of questioning after sustaining defense counsel's objection on relevance or prejudice grounds in most of these instances. When the trial court sustained Appellant's objection, our review is limited to whether the questions were improper and if an impropriety occurred, whether it prejudiced Appellant's substantial rights to such a degree the trial court's ruling could not remedy this impropriety. Where the

trial court overruled Appellant's objection, our review is limited to whether that decision was an abuse of discretion.

{¶12} Appellant does not point to even a single incident of the type of impermissible behavior universally recognized as prejudicial:  comment on a defendant's decision not to testify, or appeals to the jury to place themselves in the victim's position.  Instead, Appellant objects to the prosecution's theory of the case as a drug-related shooting.  Essentially, Appellant is arguing that the state's entire theory of the case amounted to misconduct.  Unfortunately for Appellant, testimony from the investigating officers directly established that the shooting was investigated as a drug-related matter and that information provided by narcotics officers was instrumental in apprehending the three men so quickly after the shooting.  Hence, the evidence was patently relevant.  Although Appellant challenges the degree to which this evidence was used by the prosecution during trial, he does not explain how this prejudiced his ability to defend himself against the crime of which he was actually convicted:  complicity to felonious assault.

{¶13} Testimony concerning drug trafficking was offered by the state to show the reason the three men were travelling together and as the source of the disagreement that resulted in the shooting.  This evidence was also offered to explain some of the steps taken by the responding and investigating officers and to suggest why witness testimony at trial contradicted some of the witnesses' original statements.  For each of these uses, the testimony offered was relevant to the relationship between Appellant and the shooter and was also relevant to the credibility of the witnesses.  It explained the behavior of both men pre- and post-

shooting and helped to explain both the circumstances in which the men were apprehended as well as the manner in which they were subsequently charged. The trial court did determine, occasionally, that additional testimony regarding drug trafficking might become more prejudicial than helpful, and ended further testimony on that theory in a few instances.

{¶14} Although Appellant alleges that all mention of narcotics and drug trafficking amounts to prosecutorial misconduct, he does not identify or even suggest a defect in the actual evidence against him that supported his conviction. Appellant does not identify any connection between the alleged misconduct and his conviction. He does argue, generally, that such evidence made him look like a "bad guy" to the jury, and this possible taint to his overall character may lead the jury to more easily convict him on the charges he faced. But the trial court clearly believed, and the record reflects, that the prosecutor's theory of the case was relevant as to certain issues. Appellant's pure speculation as to how the jury might overreact to this evidence is not the kind of "but for" argument that will support a finding of misconduct. First, the information presented to the jury does not appear, on its face, improper. Second, Appellant cannot and does not show that, even if it were improper, "but for" this evidence he would not have been convicted. Instead, he postulates that the evidence was somehow completely irrelevant to his investigation, arrest and prosecution. He then further postulates that the jury could only have been prejudiced by the introduction of this evidence. Nowhere does Appellant present, in this record, any clear correlation between either assertion. Because Appellant fails to demonstrate a causal connection between the alleged misconduct and his resulting

conviction, he cannot demonstrate reversible error. Even if Appellant had identified a single comment or act by the prosecutor that rose to the level of plain error, the error itself would not be reversible unless it operated to deprive him of a fair trial. *State v. Davis*, 76 Ohio St.3d 107, 119; 666 N.E.2d 1099 (1996), citing *Smith v Phillips*, 455 U.S. 209, 220; 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 88 (1982), fn. 10. Appellant has not identified plain error, nor has he identified a single instance of actual misconduct in the record. Appellant has not explained any relationship between the alleged misconduct and his conviction or described how he was prejudiced by the alleged misconduct other than in a general, speculative way. Neither the material in the record nor the arguments offered by Appellant demonstrate that the state engaged in misconduct or that the testimony elicited by the state as to drug trafficking resulted in Appellant's conviction for complicity to aggravated assault. Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

The trial court abused its discretion by allowing drug evidence and testimony to be admitted when that evidence was either irrelevant to the charge of complicity to commit felonious assault, or unduly prejudicial.

**{¶15}** Again, Appellant does not specifically identify the testimony and evidence he argues is prejudicial, but instead contends generally that "[e]vidence of drugs, drug paraphernalia, money, and any other evidence related to drug use or possession or any other fact of illegal drugs" does not constitute evidence of any element of complicity with felonious assault. (Appellant's Brf., p. 14.) No actual

evidence or testimony concerning drug use or drug paraphernalia was offered by the state, although testimony concerning the contents of one of the two motel rooms rented by Appellant was allowed. The testimony that was permitted established that a digital scale with cocaine residue was found in one of the rooms and that all three men had large amounts of cash stuffed in their shoes when they were apprehended. The officers who described the investigation also testified that the identification of the three men and their subsequent apprehension at the motel was due in part to narcotics officers' knowledge of their known associates who had been identified in an ongoing drug trafficking investigation. According to the state, the fact that the three men had come from Columbus and had followed a certain pattern of interaction with known offenders in the area was relevant to the mental element of complicity.

{¶16} Evidence Rule 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Appellant challenges the trial court's decision to allow testimony that the shooting was investigated as a drug-related incident and disputes the relevance of the information provided by narcotics investigators. Appellant also challenges the relevance of the circumstances in which he was arrested.

{¶17} As earlier noted, Appellant's argument that the information provided by narcotics investigators and the circumstances of his apprehension should have been excluded ignores its clear relevance to the relationship of the three men and its

relevance to their purpose for staying in the area as these relate to his conviction on complicity with felonious assault. It also ignores the significance of the fact that he followed instructions and drove someone who had just shot a man away from the scene of the crime and housed him in a motel room. The challenged evidence is directly relevant to refuting Appellant's theory of the case in his defense, which relied on attempts to distance Appellant from the other two men and suggest that he was completely unaware a shooting not only might occur, but had occurred. It is also relevant to the corresponding, but rather contradictory, defense theory that although Appellant was unaware of the shooting, he never intended to drive the shooter away from the scene, but actually attempted to leave him there because of the shooting. Appellant's second assignment of error is not well-taken. The statements were not introduced to demonstrate Appellant's bad character, but instead, to explain Appellant's knowledge of the shooter's intent, assistance of the shooter after the fact, and offer a possible reason the shooting took place. The information was relevant to explain the circumstances that allowed investigators to locate the three men, and suggest a reason for some of the witness testimony that contradicted these witnesses' original statements to the police.

{¶18} Questions of admissibility are subject to the discretion of the trial court. Absent an abuse of discretion, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶19} This record reflects that the trial court allowed certain information pertinent to how the investigation was conducted, the relationship between the three men, and the circumstances in which Appellant was taken into custody to be introduced. At some point, the judge occasionally did determine that enough information had been allowed and denied the state the opportunity to continue to introduce such evidence beyond its immediate relevancy. (Tr., p. 241.) The court made a distinction between the circumstances of the arrest and investigation, which were allowed, and subsequent additional testimony concerning the money found in the shoes of all three men. The information in the record was relevant to and supports a conclusion that Appellant knew exactly what was happening when Garner pulled his pistol and ordered him to start the car. For this reason, the decision to allow such testimony was well within the court's discretion and is not barred by Evid.R. 404(B). The court stated a purpose for allowing certain testimony and then stated a purpose for ending questioning on the subject. The court's clearly articulated reasoning does not support a conclusion that the decision was arbitrary, unconscionable, or unreasonable under the circumstances. Appellant's second assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 3

The trial court abused its discretion when it refused to grant defense counsel's two motions for mistrial.

{¶20} Appellant's third assignment of error challenges the trial court's denial of two motions for mistrial. The Ohio Supreme Court "grants great deference to the

trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial." *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988). When "examining the trial judge's exercise of discretion in declaring a mistrial, a balancing test is utilized, in which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." *Id.* A defendant's right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments. *Id.* Where the facts of the case do not reflect unfairness to the accused, the public interest in insuring that justice is served may take precedence. *Id.* citing *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830 (1978).

{¶21} Appellant acknowledges that prosecutorial misconduct was not the basis of either motion for mistrial. However, on review Appellant attempts to reform the motions in the context of his allegations of misconduct and relies on *State v. Johnston*, 39 Ohio St.3d 48, 60, 529 N.E. 2d 898 (1988) for the proposition that if misconduct is the basis of the mistrial motion a reviewing court must undertake a due process analysis of the proceeding. (Appellant's Brf., p. 15.) Appellant is mistaken. If Appellant had identified an instance of prosecutorial misconduct, a due process analysis may be appropriate. However, a court's decision whether or not to grant a motion for mistrial, regardless of the basis for that motion, is reviewed for an abuse of discretion. An abuse of discretion exists when the trial court's decision is arbitrary,

unreasonable, or unconscionable. *See, e.g.*, *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715, 719-720 (1992).

**{¶22}** Appellant's mistrial argument does not identify a specific instance of misconduct by the prosecutor or a juror, or any other evidentiary or procedural defect resulting in prejudice. Instead, he again alleges that the use of drug evidence generally amounted to prosecutorial misconduct. Appellant is not presenting a mistrial argument. He is repackaging his objection to the trial court's evidentiary decisions concerning the testimony of the various investigators in an attempt to renew his general argument concerning alleged misconduct he believes occurred simply because of the prosecution's theory of the case. Evidentiary decisions were the subject of Appellant's second assignment of error and alleged misconduct was the subject of the first. Nothing is offered under this third assignment that was not previously addressed. Because Appellant has not identified any appropriate grounds for mistrial or an abuse of discretion by the trial court, and the other arguments brought under this assignment do not pertain to mistrial, Appellant's third assignment of error is overruled.

ASSIGNMENT OF ERROR NO. 4

The jury's verdict was against the manifest weight of the evidence.

**{¶23}** Appellant contends that the evidence in the record was not sufficient to support all elements of the offense (but does not assign the sufficiency as error) and argues that the jury should have reached a different conclusion based on the lack of "substantial evidence" that Appellant knew he was aiding and abetting a felonious

assault. Appellant nevertheless concedes that the men travelled together, the shooting occurred, the men left together after the shooting in a car driven by Appellant, and that Appellant obtained and paid for the motel rooms in which they spent the night. In determining whether a criminal judgment is against the manifest weight of the evidence, we act as a "thirteenth juror" to determine whether, "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). The verdict is not against the weight of the evidence when there is evidence in the record which, if believed, will convince the average person of the accused's guilt beyond a reasonable doubt. *State v. Eley*, 56 Ohio St.2d 169, 172, 383 N.E.2d 132 (1978).

**{¶24}** "A verdict that is supported by sufficient evidence may still be against the manifest weight of the evidence. 'Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." ' (Emphasis sic.)" (Internal citations omitted.) *State v. Barnhart*, 7th Dist. No. 09 JE 15, 2010-Ohio-3282, ¶24, quoting *Thompkins*, supra, at 387. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine.

*State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

**{¶25}** The jury in this instance was instructed by the court as to the meaning of complicity in the commission of felonious assault as follows:

Before you can find the Defendant guilty you must find that the State of Ohio has proven, beyond a reasonable doubt, that on or about the 25th day of May, 2010, in Columbiana County, Ohio, the Defendant did knowingly aid or abet another in committing the offense of felonious assault.

A person acts knowingly regardless of his or her purpose when he or she is aware that his or her conduct will probably cause a certain result, or will probably be of a certain nature. A person has knowledge of circumstances when he or she is aware that such circumstances probably exist. Aid or abet means supported, assisted, encouraged, cooperated with, advised or [incited].

For the purposes of this case, felonious assault is knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordinance [sic]. I've already defined knowingly for you. Cause is an act or failure to act which in a natural and continuous sequence directly produces physical harm, without which it would not have occurred.

Physical harm means any injury, illness, or other physiological impairment regardless of its gravity or duration. Deadly weapon means any instrument, device or thing capable of inflicting death and designed or specifically, or specially adapted for use as a weapon or possess carried or used as a weapon.

Dangerous ordinance [sic] means any firearm. * * *

The Defendant may not be found guilty of complicity unless the offense of felonious assault was actually committed. * * *

(Tr., pp. 596-599.) Both at trial and on appeal Appellant conceded the following: the shooting occurred; he had some type of relationship with the shooter; he drove the vehicle away from the scene; and he rented and paid for the two hotel rooms in which the three men stayed after the shooting. At trial, the jury heard testimony from witnesses that the victim and his son, as well as others, were involved in an altercation that began inside the bar and moved outside. The jury also heard that Garner pulled the pistol prior to telling Appellant to go and get the car. A witness testified that after the initial shots were fired and before the shooter got into the car driven by Appellant, the gunman stood on the running board and attempted to continue shooting but the firearm appeared to jam.

{¶26} The victim initially gave a statement suggesting that Appellant gave Garner the firearm before going to get the car. Although the victim's testimony at trial differed from his initial statement, which was included in with the evidence at trial, various witnesses and the victim indicated that there were multiple shots and

attempted shots. The record reflects probative evidence on each element of the offense as described by the jury instructions. The testimony of the two defense witnesses was placed in context by their original statements to the police, a prior conviction for false statements, and the fact that the victim reported attempts by friends or relatives of Appellant to have the victim write a letter on Appellant's behalf. Where, as here, there is evidence in the record which, if believed, would support conviction, and there is nothing in the record that would tend to discredit the available evidence, deference must be given to the determination reached by the trier of fact. *DeHass*, *supra*.

**{¶27}** Appellant's fourth assignment of error is without merit and is overruled.

## ASSIGNMENT OF ERROR NO. 5

It was plain error for the trial court to fail to give the jury an instruction on lesser included offenses.

**{¶28}** Appellant contends that the jury should have been instructed on the elements of complicity to commit assault or complicity to commit negligent assault as alternatives to felonious assault due to the differing degree of the mental state requirements in the lesser offenses. Appellant argues in support of this assertion that the prosecution failed to establish that he acted with the mental state necessary to establish complicity to aggravated assault. No objection was raised at trial on these grounds.

**{¶29}** "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."

*State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. The Supreme Court has "repeatedly emphasized, the plain error test is a strict one: '[A]n alleged error "does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." ' " Internal citations removed. *State v. Murphy*, 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001), quoting *State v. Campbell*, 69 Ohio St.3d at 41, 630 N.E.2d at 345 (1994).

**{¶30}** A reviewing court has discretion to determine whether a plain error analysis is necessary. In this instance, there is no dispute that the shooting occurred. The shooting was a felonious assault. Appellant conceded at trial and again in his brief: "There was no denial of the fact of the felonious assault, which is a necessary element of the complicity charge." (Appellant's Brf., p. 26.) Moreover, there was no objection to the jury instructions. Because there is no genuine dispute that the shooting occurred and complicity to commit assault and complicity to commit negligent assault are not lesser included offenses of complicity to commit felonious assault, Appellant has failed to identify an error for review. Appellant's lesser included offense argument does not amount to plain error. The substance of the argument does not explain how Appellant could be convicted of complicity to commit any crime other than the one he readily admits did occur. Instead, Appellant repeats an argument about the weight of the state's evidence as to the knowledge element of Appellant's conviction. The issue of the weight of the evidence was addressed under Appellant's fourth assignment of error. To the extent that this assignment of error raises the same issues, it is overruled for the same reasons. Appellant's fifth

assignment of error does not identify any error, least of all a plain error, for review and is therefore overruled.

## ASSIGNMENT OF ERROR NO. 6

The cumulative effect of the errors in his case deprived Appellant Bryan Carmichael of a fair trial.

**{¶31}** Appellant contends that each of the errors identified in his preceding assignments warrant reversal, but that even if they are individually found harmless, their cumulative effect deprived Appellant of a fair trial. However, errors do not become prejudicial "by sheer weight of numbers." *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶241. Although cumulative error may "be found when the effect of multiple errors * * * acts to deprive the defendant of his constitutional right to a fair trial;" an assignment of error "that simply intones the phrase 'cumulative error' but offers no analysis or argument constitutes an assignment of error without substance." *State v. Scott*, 7th Dist. No. 07 MA 152, 2009-Ohio-4961, ¶92–93 (citing *State v. Garner*, 74 Ohio St.3d 49, 656 N.E. 2d 150 (1995) and *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150).

**{¶32}** Appellant has not identified a single instance of error. Even if error could become prejudicial by sheer weight of numbers, such numbers are completely nonexistent, here. There is no evidence in the record that suggests that the jury would have acquitted Appellant if the jury was not aware that the incident was investigated as a drug-related shooting and that a digital scale with cocaine residue and plastic baggies were recovered from one of the motel rooms rented by Appellant

who was found with money in his shoes.  Absent any error there is no cumulative effect that worked to deprive Appellant of his right to a fair trial.

**{¶33}** Appellant's sixth assignment of error is without merit and is overruled.

### Conclusion

**{¶34}** Appellant's six assignments of error are without merit.  The record does not reflect prosecutorial misconduct, abuse of judicial discretion, improper use of evidence, grounds for mistrial or cumulative error.  Appellant's assignments are overruled in their entirety and the judgment of the trial court is affirmed.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.