[Cite as *State v. Adams*, 2017-Ohio-1145.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. William B. Hoffman, J. |
| -vs- | : | |
| | : | Case No. 2016CA00106 |
| | : | |
| JERMAINE LATIFF ADAMS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of Common Pleas, Case No. 2016CA00106


JUDGMENT:                 AFFIRMED


DATE OF JUDGMENT ENTRY:     March 27, 2017


APPEARANCES:

For Plaintiff-Appellee:                  For Defendant-Appellant:

JOHN D. FERRERO, JR.              AARON KOVALCHIK
STARK CO. PROSECUTOR          116 Cleveland Ave. NW
RENEE M. WATSON                  808 Courtyard Centre
110 Central Plaza S., Ste. 510     Canton, OH 44702
Canton, OH 44702-1413

*Delaney, P.J.*

{¶1}   Appellant Jermaine Latiff Adams appeals from the April 25, 2016 Judgment Entry of the Stark County Court of Common Pleas.  Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   This case arose on August 16, 2015, when victim Alondo Perry was shot four times by appellant, his housemate.  Perry died as a result of his injuries.

{¶3}   Appellant, his girlfriend Beth Hartsel, and their child lived in a house on 23rd Street Northwest in Canton.  Also living in the house were Alondo Perry, Jessica Smith, and Carlton Trammel.  Smith's two young children were sometimes present as well.

*Carlton Trammel*

{¶4}   On August 16, Trammel was sitting in a chair in appellant's bedroom watching television, as he was accustomed to do.  Appellant and Perry arrived at the house and knocked on the front door because they did not have a key.  Trammel let them in and all three went into appellant's bedroom to watch television.  Shortly thereafter Perry took a call on his cell phone and briefly left the room.  Upon his return, appellant asked Trammel to leave the room so he and Perry could talk.  Trammel grabbed a cigarette and left the house through a back door.  He walked across the backyard toward a friend's house when he heard a muffled sound like "ch-ch-ch" and someone screamed.  Trammel kept walking and "[tried] to think about nothing."  T. 307.  He did not return to the house that night.

{¶5}   Trammel testified that appellant and Perry were not agitated or fighting when they came into the house or while they were in the bedroom.  Trammel was unaware

of any problem between the two at all and did not become aware of the murder until the next day.

*Jessica Smith*

{¶6}   Jessica Smith was arrested on a material witness warrant and reluctantly testified at trial.  Smith lived at the house intermittently and was present on the evening of August 16, 2015.  She heard appellant and Perry come home and go into appellant's bedroom.  Smith was in a bathroom in the back of the house bathing one of her children when Beth Hartsel came into the bathroom yelling and locked the door.  Smith and Hartsel gathered the children and led them out of the house.

{¶7}   As they left, Smith saw Perry's body on the floor.  Appellant was sitting on the steps with a gun in his hand and Smith asked him what happened.  Appellant told her someone tried to rob Perry and told her to call 911.  Smith called 911 and said an ambulance was needed.  Smith, Hartsel, and the children left the scene.

*Conflicting Stories to E.M.T.s and Police*

{¶8}   E.M.T.s arrived on the scene first, without police, because the 911 caller requested medical attention and hung up.  First responder Michael Rodriques arrived and found a man standing on the front porch.  The man told him someone inside the house needed a medic.  Rodriques asked, "What's wrong with him?" and the man responded "I shot him."  In response to Rodriques' questions, the man said the victim broke into the house and they struggled over a gun.  Rodriques entered the house and found Perry on the floor, already deceased.  Rodriques called police and started C.P.R.  Appellant sat on the couch and was present when police arrived.

{¶9}   Ptl. Christopher Wells was among the first police officers on the scene.  He found appellant sitting in a chair, sweating profusely and breathing heavily.  Appellant told Wells he and Perry had argued in a vehicle on their way back to the house; Perry demanded money from appellant; appellant tried to calm Perry down; Perry jumped on appellant's back and tried to reach for cash in appellant's back pocket, causing appellant to fall onto the bed.  Appellant told Wells he shot Perry because Perry threatened to stab him with a pair of scissors

*Appellant's Videotaped Statements to Detectives*

{¶10} Appellant made a videotaped statement to law enforcement which was shown to the jury as appellee's Exhibits 23-A and 23-B.  Appellant stated that he and Perry were related and had known each other for a long time.  Perry was from Detroit but he would often come to Canton on a bus and stayed with appellant.  Appellant said Perry sold weed to make a living and appellant tried to "help him out," but Perry "acted like appellant owed him something."  On the day of the murder, he and Perry intended to travel to Akron to buy marijuana for personal use.  Neither man had a driver's license, so appellant asked an acquaintance, Bridgette Hill, to drive them in her car.

{¶11} Hall drove appellant and Perry to a residence in Akron.  Appellant told police this was Perry's "connection" and he didn't know the people involved, but the person Perry wanted to see did not show up.  Hall briefly returned to pick the two up, but left again when they weren't ready to leave.  Hall did not return for several hours, which angered Perry.  When Hall finally returned, Perry was agitated and "talking crazy" to her, to the extent that she stopped the car at a friend's house, got out, and refused to accompany

the men any further. Appellant proceeded to drive Hall's car back to the Canton residence, with Perry, trying to calm him down.

{¶12} Appellant said that upon their return to the residence, Trammel let them in, they proceeded to the bedroom, and appellant asked Trammel to leave the room so he could talk to Perry. Perry, though, knew appellant had $2700 on him that he had intended to buy "weed" with. Perry told appellant to give him the money and appellant refused. Appellant said Perry "rushed" him and the two "tussled" back and forth, with Perry attempting to reach into appellant's back pants pocket to grab the money. At some point Perry was on top of appellant on the bed and appellant was able to reach between the mattress and headboard where his handgun was hidden. Appellant said he grabbed the gun and "cocked" it, and Perry grabbed a pair of scissors and threatened to stab him with them.

{¶13} Appellant said Perry stood in front of the only way out of the bedroom, a single doorway, with the scissors in his hand. Appellant said he started shooting when Perry threatened him with the scissors, but aimed low because he only wanted to get Perry away from him and did not want to kill him. Appellant said he opened the bedroom door and told Hartsel to call 911.

*Physical Evidence*

{¶14} Appellant was found to have $2630.75 in cash in his back shorts pocket. He had a superficial cut on his left hand and scrapes on his legs which he said were from mosquito bites. Police collected a D.N.A. standard and a gunshot residue test from appellant, which ultimately indicated he had recently fired a gun.

{¶15} At the residence, police collected a .40 caliber Smith and Wesson semiautomatic firearm with one round in the chamber and a magazine for the firearm containing 7 rounds. Four spent shell casings were found in the bedroom. Police also found one pair of scissors on top of a dresser under some books and a second pair of scissors on the floor concealed under an article of clothing. The latter pair of scissors were silver in color with gold handles.

{¶16} From the coroner, police collected a bullet found in Perry's body and his clothing.

{¶17} The autopsy revealed four entrance wounds. A wound referred to at trial as "wound six" (based upon the autopsy diagram) was to the victim's left side. The bullet traveled through Perry's body and exited on the right. Due to this injury, two liters of fluid blood entered Perry's abdominal cavity, causing him to "bleed out." This wound alone would have been fatal.

{¶18} A second gunshot wound, referred to at trial as "wound seven," entered Perry's abdomen and the bullet was found lodged in his spine. This wound could have eventually proven fatal and would also have potentially caused neurological issues and paralysis.

{¶19} The remaining gunshot wounds, including a shot to the victim's scrotum, would not have proven fatal.

{¶20} Both pairs of scissors were examined for D.N.A. Appellant told police Perry threatened him with a heavy pair of scissors with gold handles. The pair found on the dresser yielded a mixture of D.N.A. from more than one person, but the criminalist was unable to include or exclude appellant or Perry due to the size of the sample. The gold-

handled scissors contained appellant's D.N.A. on the blades. The handles had a mixture of D.N.A. which was not enough for inclusion although Perry was excluded as a contributor.

*Indictment, Trial, and Conviction*

{¶21} Appellant was charged by indictment with one count of murder pursuant to R.C. 2903.02(B), a felony of the first degree [Count I],[1] and one count of having weapons while under disability pursuant to R.C. 2923.13(A)(3), a felony of the third degree [Count II]. Count I was accompanied by a firearm specification pursuant to R.C. 2923.13(A)(3).

{¶22} Appellant entered pleas of not guilty and waived his right to trial by jury upon Count II. The matter proceeded to jury trial upon Count I, murder, and the firearm specification. Appellant was found guilty as charged and sentenced to an aggregate prison term of 20 years to life.

{¶23} Appellant now appeals from the judgment entry of conviction and sentence entered in the Stark County Court of Common Pleas on April 25, 2016.

{¶24} Appellant raises six assignments of error:

**ASSIGNMENTS OF ERROR**

{¶25} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶26} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING GRUESOME PHOTOS WHICH WERE INFLAMMATORY AND HIGHLY PREJUDICIAL."

---

[1] Appellant was charged with causing the death of Alondo Perry as a proximate result of committing the offense of felonious assault pursuant to R.C. 2903.11(A)(1) [serious physical harm] and/or 2903.11(A)(2) [by means of deadly weapon].

{¶27} "III.   APPELLANT WAS DENIED A FAIR TRIAL AS A RESULT OF PROSECUTORIAL MISCONDUCT."

{¶28} "IV.   THE TRIAL COURT ERRED WHEN IT INSTRUCTED THE JURY THAT APPELLANT HAD A DUTY TO RETREAT."

{¶29} "V.   APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL."

{¶30} "VI.  THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DID NOT ALLOW TESTIMONY TO BE PRESENTED CONCERNING THE VICTIM'S CRIMINAL RECORD."

**ANALYSIS**

I.

{¶31} In his first assignment of error, appellant argues his murder conviction is against the manifest weight and sufficiency of the evidence.  We disagree.

{¶32} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.  *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus.  The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after

viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶33} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id*.*

{¶34} Appellant was convicted of one count of murder pursuant to R.C. 2903.02(B), which required appellee to prove appellant caused Perry's death as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree. In this case, the underlying offense is felonious assault pursuant to R.C. R.C. 2903.11(A)(1) and/or (A)(2), which state, "No person shall knowingly [c]ause serious physical harm to another * * *, or [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Appellant was also convicted of the accompanying firearm specification pursuant to R.C. 2941.145.

{¶35} Appellant argues his convictions are against the manifest weight and sufficiency of the evidence because he acted in self-defense.[2] "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray * * * [citations omitted]; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force * * * [citations omitted]; and (3) the slayer must not have violated any duty to retreat or avoid the danger, *State v. Peacock*, 40 Ohio St. 333, 334 (1883); *Graham v. State*, 98 Ohio St. 77, 79 [120 N.E. 232] (1918).'" *State v. Robbins*, 58 Ohio St.2d 74, 79-80, 388 N.E.2d 755 (1979), quoting *State v. Melchior*, 56 Ohio St.2d 15, 381 N.E.2d 195 (1978).

{¶36} Appellant argues the evidence at trial supports his claims that he was assaulted by Perry first, the two struggled, and he had a bona fide belief his life was in imminent danger due to Perry's threats with the scissors.[3] Appellee responds that the affirmative defense of self-defense is not available to appellant because, as the jury was instructed, "[i]f the defendant used more force than was reasonably necessary and if the force used is greatly disproportionate to the apparent danger, then the defense of self-defense is not available." (T. III, 97).

{¶37} The jury could have reasonably rejected appellant's self-serving explanation of events describing Perry as the aggressor. Appellee's evidence was

---

[2] Appellant does not challenge his conviction upon Count II, having weapons while under disability.

[3] As appellant points out, and as will be addressed infra, the "duty to retreat" element is inapplicable because there is no such duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home. *State v. Thomas*, 77 Ohio St.3d 323, 328, 1997-Ohio-269, 673 N.E.2d 1339 (1997).

undisputed at trial and revealed that appellant told a number of conflicting stories about events leading to the shooting, only eventually concluding that Perry threatened his life with scissors. The jury could have reasonably believed appellant was at fault in creating the situation leading to the murder, or that appellant did not have a bona-fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in shooting Perry four times.

{¶38} In reviewing the evidence in a light most favorable to appellee, we find any rational trier of fact could find appellant guilty of the essential elements of murder with a firearms specification beyond a reasonable doubt. Thus, there exists sufficient evidence to sustain appellant's conviction upon Count I and the accompanying specification. Further, upon our review of the entire record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses and in resolving conflicts in the evidence, we cannot find the jury clearly lost its way and created a manifest miscarriage of justice in convicting appellant. His first assignment of error is thus overruled.

II.

{¶39} In his second assignment of error, appellant argues the trial court abused its discretion in admitting autopsy photos which were inflammatory and highly prejudicial. We disagree.

{¶40} The admission or exclusion of relevant evidence is a matter left to the sound discretion of the trial court. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

In *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), paragraph seven of the syllabus, the Supreme Court of Ohio held:

> Properly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number.

{¶41} Evid.R. 104 places the trial court in the position of determining admissibility of evidence. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 states:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible.

{¶42} Further consideration is required under Evid.R. 403(A): "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶43} A total of 99 photos were taken during the autopsy of Perry; appellee sought to admit 22.  At trial, appellant generally objected to all of the photos and specifically

objected to six. Appellant contends the trial court abused its discretion in permitting the autopsy photos to be shown over objection because there were nine gunshot wounds, thus "maybe nine photos would be relevant and have probative value" but there can be "no legitimate purpose" for an additional 13 photos.

{¶44} We have reviewed the photos admitted in this case, and while the photos at issue are "unquestionably grisly," *State v. Dixon*, 5th Dist. Muskingum CT2013–0055, 2014-Ohio-4235, ¶ 73, appeal not allowed, 142 Ohio St.3d 1448, 2015-Ohio-1591, 29 N.E.3d 1003, their probative value outweighs any prejudice to appellant. "[P]rovided the probative value of each photograph in the case at bar outweighs its prejudicial impact and the photograph is neither repetitive nor cumulative in nature, its admission as evidence will not be disturbed as an abuse of discretion by the trial court." *State v. Morales*, 32 Ohio St.3d 252, 258, 513 N.E.2d 267 (1987). The trial court reviewed each photograph carefully and admitted only those found not to be unnecessarily duplicative. We have reviewed each of the admitted photos and agree they are not repetitive or cumulative in nature. See, *State v. Dixon*, supra, 2014-Ohio-4235 at ¶ 73. Each photo of Perry's injuries depicting the number and location of the injuries and the resulting wounds are all probative evidence of appellant's purpose to cause death. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 102 (2014), cert. denied 135 S.Ct. 959, 190 L.Ed.2d 848 (2015), citing *Maurer,* supra, 15 Ohio St.3d at 265. The admitted autopsy photos best illustrate the extent and severity of the victim's injuries. *Dixon*, supra. The trial court did not abuse its discretion in admitting the limited number of photos.

{¶45} We find the admission of the photographs in this case was relevant and not unduly prejudicial. See, *State v. Woods*, 5th Dist. Stark No. 2013CA00176, 2014-Ohio-

2375; *State v. Patterson*, 5th Dist. Stark No. 2012CA00098, 2013-Ohio-1647; *Dixon*, supra, 2014-Ohio-4235.

{¶46} Appellant's second assignment of error is overruled.

III.

{¶47} In his third assignment of error, appellant argues he was denied a fair trial as a result of prosecutorial misconduct.  We disagree.

{¶48} The test for prosecutorial misconduct is whether the prosecutor's remarks and comments were improper and if so, whether those remarks and comments prejudicially affected the substantial rights of the accused. *State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990), cert. denied, 498 U.S. 1017, 111 S.Ct. 591, 112 L.Ed.2d 596 (1990). In reviewing allegations of prosecutorial misconduct, we must review the complained-of conduct in the context of the entire trial. *Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived appellant of a fair trial based on the entire record. *Lott,* supra, 51 Ohio St.3d at 166, 555 N.E.2d 293.

{¶49} Appellant argues appellee made improper comments in closing argument which prejudicially affected his right to a fair trial.  Specifically appellant points to appellee's comments that he was not crying or upset when he spoke to law enforcement and that the first shot fired was the fatal shot.  We have reviewed the record of each side's closing argument, and appellee's rebuttal, and agree with appellee that both statements were made in response to appellant's closing argument. Appellant fails to point to any improper statement by the prosecutor which is not arguably supported by appellee's evidence. *State v. Meeks*, 2015-Ohio-1527, 34 N.E.3d 382, ¶ 103 (5th Dist.), appeal not

allowed, 143 Ohio St.3d 1543, 2015-Ohio-4633, 40 N.E.3d 1180. In closing argument, a prosecutor may comment on "what the evidence has shown and what reasonable inferences may be drawn therefrom." Id., citing *State v. Lott,* 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

{¶50} Finally, appellant has failed to demonstrate prejudice based upon either of the prosecutor's comments he cites. "Appellant does not identify any connection between the alleged misconduct and his conviction. * * * *. [T]he trial court clearly believed, and the record reflects, that the prosecutor's theory of the case was relevant as to certain issues. Appellant's pure speculation as to how the jury might overreact to this evidence is not the kind of 'but for' argument that will support a finding of misconduct." *State v. Carmichael,* 7th Dist. Columbiana No. 11 CO 23, 2013-Ohio-2178, 2013 WL 2325849, ¶ 14. None of the evidence or arguments cited by appellant are improper, and appellant cannot demonstrate, even if they were improper, "but for" the evidence and arguments he would not have been convicted. Having failed to demonstrate a causal connection between the alleged misconduct and his resulting convictions, appellant cannot demonstrate reversible error.

{¶51} Appellant's third assignment of error is overruled.

IV.

{¶52} In his fourth assignment of error, appellant argues the trial court erred in providing the instruction upon duty to retreat as part of the instruction on self-defense. We disagree to the extent that although the duty-to-retreat instruction was given in error, we find the error to be harmless.

{¶53} Appellant concedes he did not object to the pertinent jury instructions regarding self-defense or to the verdict forms. However, under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In *State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452 (1983), the Ohio Supreme Court discussed the application of the plain error doctrine in the context of an allegedly erroneous jury instruction. The Court stated: " * * * [A]n erroneous jury instruction 'does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.' *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Additionally, the plain error rule is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice." Id*.* at 227. Finally, "a single jury instruction should not be judged in isolation but, instead, must be considered in the context of the overall charge." *State v. Black*, 5th Dist. Stark No. ****, 2012-Ohio-2874, ¶ 29, citing *State v. Schlee,* Lake App.No.2004–L–070, 2005–Ohio-5117, ¶ 32 (additional citations omitted).

{¶54} As we noted supra, there is no such duty to retreat from one's own home before resorting to lethal force in self-defense against a cohabitant with an equal right to be in the home. *State v. Thomas*, 77 Ohio St.3d 323, 328, 1997-Ohio-269, 673 N.E.2d 1339 (1997). Appellant argues the outcome would have been different if a "no duty to retreat" instruction had been given because the superfluous element created an insurmountable barrier to his ability to demonstrate self-defense. Upon review, we do not find plain error in the complained of jury instructions because appellant suffered no material prejudice. See, *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772

N.E.2d 81, ¶ 77 (2002); *State v. Farringer*, 5th Dist. Fairfield No. 14-CA-43, 2015-Ohio-2644, appeal not allowed, 144 Ohio St.3d 1440, 2015-Ohio-5468, 43 N.E.3d 451.

{¶55} Appellant's fourth assignment of error is overruled.

V.

{¶56} In his fifth assignment of error, appellant argues he received ineffective assistance of counsel because defense trial counsel failed to object to the portion of the self-defense instruction regarding duty to retreat.  We disagree.

{¶57} To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test. Initially, a defendant must show that trial counsel acted incompetently. *See*, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). In assessing such claims, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158 (1955).

{¶58} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland,* 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

{¶59} Even if a defendant shows that counsel was incompetent, the defendant must then satisfy the second prong of the *Strickland* test. Under this "actual prejudice" prong, the defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."
*Strickland,* 466 U.S. at 694.

{¶60} We have already determined the outcome of appellant's trial would not have been clearly different if the trial court had not given the duty-to-retreat instruction, supra. We further find Appellant has failed to establish the second prong of *Strickland* as well, i.e., that there is a reasonable probability that, but for counsel's failure to object to the instruction, the result of the proceeding would have been different. The physical evidence established appellant responded with four gunshots to repel the threat of a use of scissors. Therefore, the jury could have found self-defense is not available since the force used was greatly disproportionate to the apparent danger.

{¶61} Appellant's fifth assignment of error is overruled.

VI.

{¶62} In his sixth assignment of error, appellant summarily argues the trial court should have permitted the defense to admit evidence of appellant's knowledge that Perry had served time in prison. We disagree.

{¶63} We recently examined a similar argument in *State v. Galloway*, 5th Dist. Delaware No. No. 15 CAC 11 0089, 2016-Ohio-7767, --N.E.3d--, ¶¶ 10-27. The admission or exclusive of relevant evidence rests within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Self-defense is an affirmative defense and the burden of going forward with evidence on that issue and the burden of proof by a preponderance of the evidence, is upon the accused. R.C. 2901.05(A).

{¶64} Evid.R. 404(A)(2) governs the admission of evidence concerning character of a victim and provides as follows:

Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions: * * * (2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same * * *.

{¶65} Where character evidence is permitted, Evidence Rule 405 governs the permissible methods for proving character and provides, in pertinent part:

Reputation or opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. Specific instances of conduct. In cases in which character or a trait of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

{¶66} The Ohio Supreme Court held that specific instances of a victim's prior conduct are not admissible to prove that a victim was the initial aggressor, regardless of a defendant's knowledge. *State v. Barnes*, 94 Ohio St.3d 21, 759 N.E.2d 1240 (2002). The Court reasoned that while a victim's "violent propensity may be pertinent to proving that he acted in a way such that a defendant's responsive conduct satisfied the elements

of self-defense, no element requires proof of the victim's character or character traits." Id.

Since a defendant can "successfully assert self-defense without resort to proving any

aspect of the victim's character," Evid.R. 405(B) "precludes a defendant from introducing

specific instances of the victim's conduct to prove that the victim was the initial aggressor."

Id.

{¶67} The Ohio Supreme Court reaffirmed its decision in *Barnes* finding a victim's

character is not an essential element of a self-defense claim and that Evid.R. 405(A) does

not allow a party to use extrinsic evidence of specific instances of a person's character to

rebut the other party's evidence regarding that person's character. *State v. Hale,* 119 Ohio

St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864. The Court further held that Evid.R. 405

authorizes the use of specific instances of conduct in two situations: (1) on cross

examination of other party's character witness and (2) in cases where character or a trait

of character of a person is an essential element of a charge, claim, or defense. Id.  Neither

is the case here, where appellant argues he should have been permitted to "elicit

testimony from law enforcement" that appellant was aware Perry had spent time in prison.

As appellee points out, Perry's character is not an essential element of the claim of self-

defense because Evid.R. 405(B) precludes a defendant from introducing specific

instances of the victim's conduct to prove that the victim was the initial aggressor. *Barnes,*

supra, 94 Ohio St.3d at 23.

{¶68} Appellant argues summarily such testimony would have been admissible to

demonstrate his state of mind at the time of the incident, but Perry's alleged propensity

for violence is not an essential element of the defense of self-defense.  *Galloway*, supra,

2016-Ohio-776 at ¶ 23, citing *State v. Richards,* 5th Dist. Licking No. 2011–CA–00074,

2012-Ohio-1115, 2012 WL 929662 and *State v. Snyder,* 5th Dist. Tuscarawas No. 10AP060021, 2011-Ohio-3334, 2011 WL 2586789.

{¶69} As in *Galloway*, appellant did not testify and sought to introduce the evidence through cross-examination of law enforcement. However, courts have not extended the state of mind exception to witnesses other than a defendant. Id. at ¶ 24, citing *State v. Evans,* 8th Dist. Cuyahoga No. 79895, 2002 WL 1041745; *State v. Miles,* 8th Dist. Cuyahoga No. 81480, 2003-Ohio-2651, 2003 WL 21196552; *State v. Mason,* 6th Dist. Lucas Nos. L–02–1211, L–02–1189, 2003-Ohio-5974, 2003 WL 22532865. As the Sixth District stated, "an alleged victim's purported violent nature is not an essential element of self-defense and therefore, witnesses other than the defendant have no admissible basis for testifying to specific instances of violent conduct." *State v. Gott,* 6th Dist. Lucas No. L–11–1070, 2013-Ohio-4624, 2013 WL 5728347.

{¶70} Finally, as appellee points out, appellant could have introduced the argument of Perry's alleged propensity for violence through other means.  The trial court ruled appellant could testify to specific instances of Perry's violent conduct and his reputation for violent behavior.  See, *State v. Davis*, 5th Dist. Stark No. 2003 CA 429, 2004-Ohio-7056 (the defendant may offer his own testimony regarding specific instances of the victim's prior violent conduct in order to establish his state of mind, i.e. his bona fide belief that he was in imminent danger).

{¶71} Appellant's sixth assignment of error is overruled.

**CONCLUSION**

{¶72} Appellant's six assignments of error are overruled and the judgment of the

Stark County Court of Common Pleas is affirmed.

By:  Delaney, P.J.,

Gwin, J. and

Hoffman, J., concurs.